**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| PABLO ABREU, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 21-cv-397 (APM) |
| | ) |
| HOWARD UNIVERSITY, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

This case arises from the dismissal of Plaintiff Pablo Abreu, a student, from Howard University College of Medicine ("the College"). Plaintiff filed this suit against Defendant Howard University ("the University"), which moves to dismiss the Complaint for failure to state a claim or, in the alternative, for summary judgment. For the reasons outlined below, the court grants the University's Motion to Dismiss.

### II.    BACKGROUND

The court accepts the allegations in the Complaint as true and considers those documents referenced in the Complaint that are attached to the University's Motion. Compl. and Jury Demand, ECF No. 1 [hereinafter Compl.]; Def.'s Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 5 [hereinafter Def.'s Mot.]. *See Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006) ("In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice.").

A.      **Factual Background**

1.      *The Manual*

The College maintains a Policies and Procedures Manual ("the Manual") that sets forth rules for maintaining good standing as a medical student.  Compl. ¶ 25; Def.'s Mot., Ex. 2, ECF No. 5-3 [hereinafter Policy Manual].  Two sets of rules are relevant here.  The first pertains to passing the United States Medical Licensing Examination ("USMLE"), a three-step examination for medical licensure in the United States.  Policy Manual at 9.[1]  The Manual provides that "[a]ll students must pass Step 1 of the USMLE prior to starting the junior year." *Id.* at 9 (emphasis omitted).  "Students who fail to have a passing score for USMLE Step 1 reported to the College . . . by the second Wednesday in July of the year following the one in which they successfully completed the sophomore year will be dismissed." *Id.* at 10 (emphasis omitted).  The Manual also limits the number of times a student may take Step 1 of the USMLE and remain in good standing: "Students who do not pass the USMLE Step 1 on the third attempt <u>will</u> be dismissed from the College of Medicine." *Id.* (emphasis omitted).

The second rule concerns the time a student is afforded to complete the curriculum.  The Manual caps the number of years to graduate with a medical degree at seven.  Policy Manual at 16; *see also* Compl. ¶ 25.  It also places a limit on interim coursework completion: "The maximum number of years to complete either the first two years of the curriculum or the second two years of the curriculum shall be no more than four academic years."  Policy Manual at 16; *see also* Compl. ¶ 25.

---

[1] When citing the Policy Manual, the court refers to ECF page numbers, not the internal pagination of the Manual itself, which is attached to Defendant's Motion in excerpted form.

2.      *Abreu's Efforts to Pass the USMLE*

Abreu completed his sophomore-year curriculum on April 19, 2017.  Def.'s Mot., Ex. 3, ECF No. 5-4 [hereinafter Extension Letter].  Thereafter began his challenges with the USMLE. On September 20, 2017, Abreu failed on his first attempt at taking the USMLE Step 1.  Compl. ¶ 11.  He therefore was not permitted to proceed to his junior year.  *Id.*  Abreu took a leave of absence from the College, and he attended a test preparatory program—the Pass Program—from January to August 2018.  *Id.* ¶ 12.

While attending the Pass Program, Abreu sought medical treatment and was diagnosed with "Specific Phobia: Situational Type" for severe testing anxiety and screened positive for ADHD.  Compl. ¶ 13; Def.'s Mot., Ex. 5, ECF No. 5-6.  The College was notified of the diagnosis on June 11, 2018, and it allowed Abreu to delay retaking the Step 1 exam.  Compl. ¶ 16.  Despite the additional time, Abreu failed again.  *Id.*

As a result of this second failure, the College considered Abreu for dismissal pursuant to its policy that "[s]tudents who fail to have a passing score for USMLE Step 1 reported to the College . . . by the second Wednesday in July of the year following the one in which they successfully completed the sophomore year will be dismissed."  Compl. ¶ 18; Policy Manual at 10 (emphasis omitted).  For Abreu, the policy meant that he was required to pass the USMLE Step 1 by July 11, 2018, which he did not do.  Abreu asked for one more opportunity to pass the exam, and the College agreed.  Compl. ¶ 18.  Abreu failed the exam for a third time on June 22, 2019. *Id.*

The College dismissed him on August 27, 2019.  *Id.* ¶ 19.  It cited two reasons from the Manual's enrollment policies for the dismissal: (1) Abreu's failure to pass the USMLE Step 1

exam after three attempts, and (2) his failure to complete his first two years of coursework within four academic years.  Compl. ¶ 7; *see also* Def.'s Mot., Ex. 4, ECF No. 5-5.

### B.    Procedural Background

In February of 2021, Abreu filed this lawsuit seeking injunctive relief and monetary damages against the University.  Compl.  Plaintiff's Complaint includes three claims: (1) breach of contract, (2) failure to accommodate under Title III of the Americans with Disabilities Act, and (3) failure to accommodate under section 504 of the Rehabilitation Act.  *Id.*  The University submitted its Motion to Dismiss, or in the Alternative, for Summary Judgment on April 27, 2021, Def.'s Mot., to which Plaintiff responded on May 10, 2021, Pl.'s Opp'n to Def.'s Mot., ECF No. 7 [hereinafter Pl.'s Opp'n].

## III.    LEGAL STANDARD

Because the court treats the University's motion as one for dismissal, only that familiar standard is set forth here.  The Federal Rules of Civil Procedures require a complaint to contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  The plaintiff need not make "detailed factual allegations" but must furnish "more than labels and conclusions" or "a formulaic recitation of a cause of action's elements."  *Id.*  Instead, a complaint must contain sufficient factual matter that, when accepted as true, "state[s] a claim to relief that is plausible on its face."  *Id.* at 570.  "A claim has facial plausibility when the pleaded factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 663

(2009).  A judge must accept as true all of the factual allegations contained in the complaint. *Twombly*, 550 U.S. at 555–56.

Additionally, a motion to dismiss may be granted "as conclusively time-barred if a trial court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency."  *Momenian v. Davidson*, 878 F.3d 381, 387 (D.C. Cir. 2017) (internal quotation marks and citations omitted).

## IV.    DISCUSSION

### A.    Plaintiff's ADA and Rehabilitation Act Claims

The court begins with Abreu's federal claims under the Americans with Disabilities Act ("ADA") and Rehabilitation Act.  The University argues that those claims should be dismissed as time-barred.  Def.'s Mot. at 26–30.[2]  The parties dispute, however, the applicable limitations period.  According to the University, because neither the ADA nor the Rehabilitation Act contains an express statute of limitations, the closest analog under District of Columbia law is the one-year period under the District of Columbia Human Rights Act ("DCHRA"), rendering Abreu's claims untimely.  Abreu, on the other hand, contends that the three-year statute of limitations for personal injury claims under District of Columbia law applies, making his filing in February 2021 timely.  Pl.'s Opp'n at 10–12.  The court agrees with the University that the DCHRA's one-year period applies and therefore Abreu's federal claims are conclusively time-barred.

As noted, neither the ADA nor the Rehabilitation Act specifies a limitations period. Therefore, the court must identify the District of Columbia law most analogous to these federal statutes.  *N. Star Steel Co. v. Thomas*, 515 U.S. 29, 34 (1995).  There are two candidates: (1) the three-year period for personal injury claims under D.C. Code § 12-301(8) and (2) the one-year

---

[2] Because Defendant filed its Motion and Memorandum in Support—which are separately paginated—in a single document, the court refers to the ECF pagination when citing the Motion and supporting Memorandum.

period for unlawful discrimination complaints under the DCHRA.  Most federal courts conducting this analysis have applied the relevant forum state's personal injury limitations period because "claims for discrimination are essentially claims for personal injury."  *Hickey v. Irving Indep. Sch. Dist.*, 976 F.2d 980, 983 (5th Cir. 1992) (*citing Goodman v. Lukens Steel Co.*, 482 U.S. 656, 661 (1987)); *see also Doe v. Southeastern Univ.*, 732 F. Supp. 7, 9 (D.D.C. 1990) (citing *Wilson v. Garcia*, 471 U.S. 261, 280 (1938) ("[Section] 1983 claims are best characterized as personal injury actions . . . .")).  Courts in this District likewise applied the three-year period for personal injury claims under District of Columbia law.  *See, e.g.*, *Doe*, 732 F. Supp. at 8–9; D.C. Code § 12-301(8) (2021).

That practice changed in this District, however, in 2012 with the D.C. Court of Appeals' decision in *Jaiyeola v. District of Columbia*, 40 A.3d 356, 368 (D.C. 2012).  There, the court held that the DCHRA was the most analogous District of Columbia law to the Rehabilitation Act and therefore applied the DCHRA's one-year limitations period, instead of the three-year term for personal injury claims.  As the D.C. Court of Appeals explained, the DCRA and the Rehabilitation Act have many similarities, including a shared purpose, ambitious aims, private causes of action for individuals victimized by disability discrimination, the same definition of the term "disability," and the same range of remedies.  *Id.* at 367–68.  The court also recognized key differences between the statutes, but nevertheless found that "these differences pale in comparison to the similarities between the [DC]HRA and [the Rehabilitation Act]."  *Id.* at 366–67.  In the end, the court held that "a Rehabilitation Act claim is far more similar to [a DC]HRA claim than it is to an ordinary personal injury claim, and the [DC]HRA must be deemed the District statute most analogous to § 504" of the Rehabilitation Act.  *Id.* at 368.[3]

---

[3] The textual similarity between the DCHRA and the ADA is yet another reason to apply the DCHRA's limitations period here.  For example, Title II of the ADA makes it unlawful for any individual to "be excluded from participation

Since *Jaiyeola*, courts in this District consistently have applied a one-year statute of limitations to claims under the ADA and the Rehabilitation Act.  *See, e.g.*, *Arthur v. D.C. Hous. Auth.*, No. 18-cv-2037 (DLF), 2020 WL 1821111, at *6–7 (D.D.C. Apr. 11, 2020) (concluding that "[t]he DCRA is the most closely analogous state statute to the provisions of the ADA or Rehabilitation Act at issue"); *Brickhouse v. Howard Univ.*, 20-cv-1197 (CRC), 2021 WL 3007670, at *1–3 (D.D.C. Feb. 11, 2021) (fully adopting the reasoning in *Jaiyeola*); *Congress v. District of Columbia*, 324 F. Supp. 3d 164, 171–72 (D.D.C. 2018) (concluding that the DCHRA "provides a more analogous cause of action to the Rehabilitation Act than the general personal injury statute"); *McFadden v. WMATA.*, 204 F. Supp. 3d 134, 142 (D.D.C. 2016) (finding claim not to be time-barred because it was filed within the one-year limitations period provided by the DCHRA); *Ware v. Hyatt Corp.*, No. 12-cv-0395 (ABJ), 2013 WL 12321372, at *14–15 (D.D.C. Mar. 27, 2013); *Brown v. District of Columbia*, No. 16-cv-0947 (EGS), 2019 WL 4345710, at *5 (D.D.C. Sept. 12, 2019) (finding that the DCHRA "is the local law most comparable to the ADA and the Rehabilitation Act").  This court agrees with these decisions and likewise finds that the DCHRA's one-year limitations period applies to Abreu's ADA and Rehabilitation Act claims.

Abreu urges the court not to follow *Jaiyeola*, arguing that "a particular state's characterization of a federal claim for purposes of determining which statute of limitations is applicable is not binding on a federal court."  Pl.'s Opp'n at 11 (quoting *Featherston v. District of Columbia*, 908 F. Supp. 2d 153, 154 (D.D.C. 2012)).  That is true as far as it goes.  However, "on questions of District of Columbia law this court defers to the D.C. Court of Appeals."  *Williams v. Martinez*, 586 F.3d 995, 1001 (D.C. Cir. 2009).  And, the question of which limitations period to

---

in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity" by reason of a disability.  42 U.S.C. § 12132.  Similarly, the DCHRA makes it unlawful for "a District government agency or office to limit or refuse to provide any facility, service, program, or benefit to any individual on the basis of an individual's . . . disability."  D.C. Code § 2-1402.73 (2021).

apply to the Rehabilitation Act and the ADA turns on an interpretation of District of Columbia law.  *Congress*, 324 F. Supp. 3d at 173.  Therefore, the court should "accord[] considerable persuasive weight to the conclusion of the D.C. Court of Appeals, as the final authority on D.C. law, that the D.C. Human Rights Act is the more analogous cause of action."  *Id.*; *see also Brickhouse*, 2021 WL 3007670, at \*1 ("While *Jaiyeola* is not binding on a federal court interpreting federal statutes, its reasoning is persuasive.").

Abreu also cites multiple cases from this District that apply the three-year personal injury statute of limitations.  Pl.'s Opp'n at 11.  Of those, the sole post-*Jaiyeola* case cited other than *Featherston* is *Tyler v. WMATA*, but in that case the court held that it "need not decide which statute of limitations to borrow because it agrees with plaintiff that even if the one-year limitations period were applied, it was tolled."  53 F. Supp. 3d 101, 103 (D.D.C. 2014).  *Tyler* therefore does not help Abreu's cause.[4]

In sum, the court holds that the DCHRA's one-year statute of limitations applies to Abreu's ADA and Rehabilitation Act claims.  Applying that one-year period, his claims are conclusively time-barred.  The College dismissed Abreu on August 27, 2019, yet he did not file suit until more than a year later on February 12, 2021.  Therefore, Plaintiff's ADA and Rehabilitation Act claims are dismissed as time-barred.

---

[4] Similarly, in a case not cited by Abreu, this court in *Jackson v. Office of the Mayor* had no occasion to decide whether the one- or three-year period controlled, because the plaintiffs' claims were time-barred even applying the three-year period.  *See* No. 16-cv-02049 (APM), 2019 WL 5579724, at \*4 (D.D.C. Oct. 29, 2019).

**B.      Plaintiff's Contract Claim[5]**

What remains then is Abreu's contract claim.[6]  Abreu's theory of breach rests on that portion of the Manual that provides that "[s]tudents who fail to have a passing score for USMLE Step 1 reported to the College . . . by the second Wednesday in July of the year following the one in which they successfully completed the sophomore year will be dismissed."  *See* Compl. ¶ 18; Policy Manual at 10 (emphasis omitted).  According to Abreu, the University violated that provision because it terminated him before this cut-off date.  *See* Compl. ¶ 28; Pl.'s Opp'n at 8. This is not, however, a plausible breach-of-contract claim.

Abreu completed his sophomore-year curriculum on April 19, 2017.  Extension Letter. Thus, he was required to submit a passing score on the USMLE Step 1 by "the second Wednesday in July of the year following the one in which [he] successfully completed the sophomore year"— in his case, July 11, 2018, *see* Policy Manual at 10; Compl. ¶ 25—or risk dismissal.[7]  Abreu failed to submit a passing score by that date, and he was terminated the *next fall* on August 27, 2019. Compl. ¶ 27.  The University therefore did not breach the Manual by prematurely dismissing him, as Abreu claims.

Before concluding, the court notes that the University relied on a different provision of the Manual for dismissal, which Abreu does not contest:  his failure to pass the USMLE Step 1 exam

---

[5] In the breach-of-contract count in his Complaint, Compl. at 5, Plaintiff inexplicably cites 41 U.S.C. § 6503, which relates to contracts made for the "manufacture or furnishing of materials, supplies, articles, or equipment," 41 U.S.C. § 6502.  However, Plaintiff has explained that this was an erroneous citation.  Pl.'s Opp'n at 5 n.1.  Therefore, the court will construe this claim as a contract claim under the common law.

[6] As the parties are diverse, *see* Compl. ¶¶ 1–3, the court has subject matter jurisdiction over Abreu's contract claim even with his federal causes of action dismissed.

[7] Abreu mistakenly states in his Complaint that the report date for passing the USMLE Step 1 exam was "the second Wednesday in July *of the year* the student completed their second year" (i.e., July 12, 2017).  Compl. ¶ 26 (emphasis added).  That date is one year *earlier* than the report date set forth in the Manual ("the second Wednesday in July of the year *following* the one in which they successfully completed the sophomore year").  Policy Manual at 10.  In any event, even if July 12, 2017, were the correct cut-off, the College still dismissed Abreu well after that date, so there was no breach.

after three attempts.  The Manual twice states that three failed attempts will result in dismissal. Policy Manual at 10 ("Students who do not pass the USMLE Step 1 on the third attempt will be dismissed from the College of Medicine." (emphasis omitted)); Policy Manual at 12 ("A student who fails USMLE Step 1 . . . three times will be dismissed from the College of Medicine." (emphasis omitted)).  Therefore, Abreu's three failures of the USMLE Step 1 exam alone warranted his dismissal.

### C.    Leave to Amend

Abreu asks for leave to amend in the event the court dismisses his complaint.  *See* Pl.'s Opp'n at 15–16.  Although the court has serious doubts that Abreu can add factual allegations to survive a second motion to dismiss, the court nevertheless will grant him the opportunity to do so. *See Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (stating that "it is an abuse of discretion to deny leave to amend unless there is sufficient reason, such as 'undue delay, bad faith or dilatory motive[,] . . . repeated failure to cure deficiencies by [previous] amendments[,] . . . [or] futility of amendment'" (second and fifth alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## V.    CONCLUSION AND ORDER

For the reasons stated, Howard University's Motion to Dismiss, ECF No. 5, is granted. Abreu shall file an amended pleading, if any, by November 16, 2021, which shall include as an exhibit a redline comparison to his original complaint.

Dated:  November 2, 2021

Amit P. Mehta
United States District Court Judge