**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **PABLO ABREU,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**HOWARD UNIVERSITY,**<br><br>**Defendant.** | ) | **Case No. 21-cv-00397 (APM)** |

**MEMORANDUM OPINION**

## I. INTRODUCTION

Plaintiff Pablo Abreu, proceeding pro se, is a former medical student at Howard University College of Medicine ("HCOM"). He brings this action against Defendant Howard University, alleging violations of both the Americans with Disabilities Act (ADA) and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Before the court is Defendant's Motion for Summary Judgment, ECF Nos. 52 & 56 [hereinafter Def.'s Mot.]. For the reasons that follow, the court grants Defendant's motion.

## II. BACKGROUND

### A. Factual Background

HCOM is a private institution in Washington, D.C. that offers a four-year Doctor of Medicine degree (M.D.) program. Pl.'s Second Am. Compl., ECF No. 35 [hereinafter SAC], ¶ 2.

Plaintiff was enrolled in the program from July 2015 to August 2019. *See* Pl.'s Resp. to Def.'s Stmt. of Material Facts, ECF No. 58 [hereinafter Pl.'s Resp. Stmt.], ¶¶ 7, 102.[1]

Plaintiff successfully completed his first two years of coursework despite finding the curriculum "demanding." *Id.* ¶ 30. As part of the program, Plaintiff was required to take the United States Medical Licensing Examination ("USMLE") Step 1 examination after his second year. *Id.* ¶¶ 24–25; Def.'s Mot., Ex. 1, ECF 52-5 [hereinafter Mighty Decl.], ¶ 25; Def.'s Mot., Ex. 9, ECF 52-13 [hereinafter Def.'s Ex. 9], at 54–55. HCOM's Policies and Procedures Manual provides that "***[a]ll students must pass Step 1 of the USMLE prior to starting the junior year***" and that "**[s]tudents who do not pass the USMLE Step 1 on the third attempt <u>will</u> be dismissed from the College of Medicine.**" Def.'s Ex. 9 at 54–55. Generally, a student must report a passing score "by the second Wednesday in July of the year following the one in which they successfully completed the sophomore year." *See id.* at 55; Pl's Resp. Stmt. ¶ 27. For Plaintiff, that date was July 11, 2018. Pl.'s Resp. Stmt. ¶ 27.

On April 21, 2017, Plaintiff took a Step 1 practice exam and received a failing grade. *Id.* ¶ 34. He attributed the result to his "weaker" medical knowledge in certain subject areas. *Id.* ¶ 35. Plaintiff subsequently informed HCOM that he was struggling with test preparation and requested additional time to study for his first attempt. *Id.* ¶ 36. The school gave Plaintiff until September 6, 2017. *Id.* ¶ 37. In August, Plaintiff asked for an additional one-month extension, and the school granted him one through October 18, 2017. *Id.* ¶¶ 39–40.

Plaintiff took the Step 1 exam for the first time on September 20, 2017. *Id.* ¶ 46. He scored a 158, which was below the minimum passing grade of 192. *Id.* HCOM thereafter offered Plaintiff the option to take a leave of absence and enroll in an eight-week "intensive" test-preparation

[1] In his response to Defendant's statement of facts, Plaintiff reproduced Defendant's statement but with discrepancies in paragraph numbering. For ease and consistency, the court refers to the numbering set forth in Plaintiff's response.

program, which Plaintiff accepted. *Id.* ¶ 51. Plaintiff ultimately remained in the program for seven months, until August 24, 2018, due to "low confidence in [his] medical knowledge" and difficulties with practice exams. *Id.* ¶¶ 52–53 (alteration in original).

While enrolled in the program, Plaintiff was referred to a psychologist, who diagnosed him with severe test-taking anxiety (formally termed "Specific Phobia: Situational Type"). *Id.* ¶¶ 60–61. The psychologist noted that this condition "could significantly impede his ability to make progress toward licensure." *Id.* ¶ 62. Plaintiff also screened positively for attention deficit hyperactivity disorder, meaning he could potentially have the condition. *Id.* ¶ 63. After receiving these diagnoses, Plaintiff again asked for more time to take the Step 1 exam. *Id.* ¶ 59. HCOM granted Plaintiff's request through September 12, 2018, two months beyond the original July 11, 2018 deadline by which to achieve a passing score or be dismissed from the program. *Id.* ¶¶ 64–65.

Around the same time he submitted the extension request, Plaintiff began taking medication to manage his condition. *See id.* ¶ 66. By July 16, 2018, Plaintiff reported that the medicine "ha[d] helped a lot." *Id.* ¶ 67. He was "sleeping much better" and was "definitely feeling calmer." *Id.* ¶ 67. Nevertheless, Plaintiff once more sought to extend time after taking another practice exam. *Id.* ¶¶ 68–69. HCOM denied the request because, were Plaintiff to pass, it did not offer a late enough start date on which he could resume his coursework. *Id.* ¶ 70.

So, on August 24, 2018, Plaintiff attempted the Step 1 exam a second time. *Id.* Although he achieved a higher score of 184, this fell below the minimum passing score of 194. *Id.* Plaintiff pleaded for yet another extension of time to achieve a passing score, stating that he planned to enroll in an additional six weeks of the intensive test-preparation program. *Id.* ¶ 73. HCOM approved the request. *Id.* ¶ 75. Plaintiff never enrolled in the program nor advised HCOM that he

had not done so. *Id.* ¶ 73. He did, however, consult with a prior tutor. *Id.* ¶ 77. He also continued with treatment and, in the months leading up to his third attempt, advised his physicians that his treatment had been "helpful in reducing [his] anxiety" and that he had "been able to make good progress" in his test preparation. *Id.* ¶¶ 85–87.

Plaintiff reached the end of the line on June 22, 2019, when he took the Step 1 exam a third time. *Id.* ¶ 98. Before receiving his score, he reported to his physicians that, "with the help of therapy and medications, he was able to function much better than his previous attempts at the test, and that his anxiety was in control and he was able to focus on the exam." *Id.* ¶ 99. However, Plaintiff scored a 173—a result not only below the minimum passing grade of 194, but also 11 points lower than his prior attempt. *Id.* ¶ 98.

After this final attempt, Plaintiff moved for "one more" opportunity to take the Step 1 exam. *Id.* ¶ 101; Def.'s Mot., Ex. 36, ECF 52-40 [hereinafter Def.'s Ex. 36]. He explained that he was still "work[ing] diligently on a treatment plan along with multiple healthcare professionals." Def.'s Ex. 36. He also raised for the first time a car accident that occurred in December 2018. *Id.*; Pl.'s Resp. Stmt. ¶¶ 78, 106. Plaintiff claimed that "[t]his event alone[] prevented [him] from focusing on studying" for his third attempt. Def.'s Ex. 36; *see also* Pl.'s Resp. Stmt. ¶ 104.

HCOM denied Plaintiff's request and dismissed him on August 27, 2019, for failure to pass the Step 1 examination on his third attempt. Pl.'s Resp. Stmt. ¶ 102. Plaintiff appealed the decision to HCOM's Dean, Hugh E. Mighty, but Dean Mighty denied the appeal. *Id.* ¶¶ 103, 112. Dean Mighty explained the factors he considered in a declaration submitted during discovery. He stated that he views the three-attempt limit as a "fundamental element of HCOM's academic program" and expressed concern that deviation from this fundamental policy would degrade HCOM's

academic standards. Mighty Decl. ¶ 44. He noted his skepticism as to whether Plaintiff could pass the Step 1 exam on further attempts, given that he was unable to do so after the test-preparation resources and several extensions HCOM had already provided. *See id.* ¶¶ 46–47. In fact, his scores were trending downward. *Id.* ¶ 46. Finally, Dean Mighty worried that, after all the time that had passed, Plaintiff's "knowledge of the material covered in the first two years would not be fresh, but rusty," and therefore he may struggle to meet subsequent requirements for graduation and medical licensure. *Id.* ¶ 45.

### B. Procedural History

Plaintiff filed the instant suit on February 12, 2021. *See* Compl., ECF No. 1. He alleged that Defendant breached an implied contract by prematurely dismissing him from the M.D. program and violated both the ADA and Rehabilitation Act by failing to accommodate his disabilities. *Id.* ¶¶ 23–38. Defendant moved to dismiss. Mem. Op. & Order, ECF No. 9, at 4. The court granted the motion, concluding that Plaintiff's ADA and Rehabilitation Act claims were time-barred and that Plaintiff had failed to state a plausible breach-of-contract claim. *Id.* at 5–9. But the court granted Plaintiff leave to amend his complaint, *id.* at 10, and Plaintiff renewed his claims shortly thereafter, First Am. Compl., ECF No. 10, ¶¶ 41–59. Defendant then renewed its motion, which the court granted for the same reasons. *See* Mem. Op., ECF No. 14, at 3–6.

Plaintiff appealed. The D.C. Circuit affirmed dismissal of the contract claim, but it reversed as to the ADA and Rehabilitation Act claims, concluding that the claims were not time-barred. *See Abreu v. Howard Univ.*, 93 F.4th 498, 501–04 (D.C. Cir. 2024). It remanded the case for this court to decide in the first instance whether Plaintiff had failed to state plausible claims. *See id.* at 502–03. Although this court acknowledged that, as to at least one of the two arguments for dismissal, "the clear weight of the caselaw favors Defendant," it believed that both issues were

"better resolved on a full evidentiary record, as has occurred in other cases," so it allowed Plaintiff's claims to proceed. *See* Order, ECF No. 34, at 2. With the court's permission, *id.* at 3, Plaintiff then filed a second amended complaint, *see* SAC. Following discovery, Defendant now moves for summary judgment.

## III. LEGAL STANDARD

A court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To defeat a motion for summary judgment, the non-moving party must put forth "more than mere unsupported allegations or denials"; its opposition "must be supported by affidavits, declarations, or other competent evidence." *Elzeneiny v. District of Columbia*, 125 F. Supp. 3d 18, 28 (D.D.C. 2015) (citing Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). A non-movant meets its burden of establishing a genuine dispute of material fact "only 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

While courts generally construe pro se pleadings liberally, *see Erickson v. Pardus*, 551 U.S. 89, 94 (2007), "[a]ny leeway does not extend to the evidence required at summary judgment, as courts hold pro se plaintiffs to the same evidentiary burdens and presumptions as represented plaintiffs." *Penkoski v. Bowser*, 548 F. Supp. 3d 12, 20 (D.D.C. 2021). Indeed, even for pro se plaintiffs, "[c]ourts may grant summary judgment to a defendant where a plaintiff's evidence is vague or conclusory." *Johnson v. Perez*, 823 F.3d 701, 710 (D.C. Cir. 2016).

## IV. DISCUSSION

Plaintiff brings failure-to-accommodate claims under both the ADA and the Rehabilitation Act. *See* SAC ¶¶ 42–51. As relevant here, Title III of the ADA prohibits places of public accommodation from discriminating against an individual "on the basis of disability." 42 U.S.C. § 12182(a). "[P]ostgraduate private schools" like HCOM are places of "public accommodation." *Id.* § 12181(7)(J). And Section 504 of the Rehabilitation Act similarly bars recipients of federal funds from discriminating against an individual "solely by reason of [their] disability." 29 U.S.C. § 794(a). The court will analyze the two claims together. *See, e.g.*, *Harrison v. Rubin*, 174 F.3d 249, 253 (D.C. Cir. 1999) ("There is no significant difference in [the] analysis of the rights and obligations created by the ADA and the Rehabilitation Act." (internal quotation marks omitted)).

To succeed on his failure-to-accommodate claims, Plaintiff must produce sufficient evidence to establish that "(1) [he] was a qualified individual with a disability, (2) [HCOM] had notice of [his] disability[,] and (3) [HCOM] denied [his] request for a reasonable accommodation." *Ward v. McDonald*, 762 F.3d 24, 31 (D.C. Cir. 2014). An individual is "qualified" if they can perform the essential functions of the position "with or without reasonable accommodation." *Breen v. Dep't of Transp.*, 282 F.3d 839, 841 (D.C. Cir. 2002) (internal quotation marks omitted). For the two reasons explained below, the court concludes there is no genuine dispute that Plaintiff is not a "qualified individual," and thus his claims fail as a matter of law.

### A. Fundamental Alteration

First, Plaintiff's requested accommodation would require Defendant to fundamentally alter its academic requirements. Title III specifically provides that a covered entity need not grant a requested accommodation if it "can demonstrate that making such modifications would

fundamentally alter the nature of [its] goods, services, facilities, privileges, advantages, or accommodations." 42 U.S.C. § 12182(b)(2)(A)(ii). So, in the educational context, there is "no requirement . . . to lower or to effect substantial modifications of [academic] standards to accommodate a [disabled] person." *Se. Cmty. Coll. v. Davis*, 442 U.S. 397, 413 (1979). The court follows the lead of other circuits in analyzing this issue as part of its inquiry into whether a plaintiff is "qualified." *See Zukle v. Regents of the Univ. of Calif.*, 166 F.3d 1041, 1046–47 (9th Cir. 1999); *Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 464–67 (4th Cir. 2012); *Rodrigo v. Carle Found. Hosp.*, 879 F.3d 236, 241–43 (7th Cir. 2018).

As an initial matter, the court will defer to Defendant's academic judgment in performing this analysis. Although the D.C. Circuit has not expressly held that such deference is due in these exact circumstances, it has observed that deference to an institution of higher education "may well be appropriate when the question before the court turns on the merits of an academic disagreement"; or, in other words, when the dispute involves a "genuinely academic decision." *Steele v. Mattis*, 899 F.3d 943, 948–49 (D.C. Cir. 2018) (quoting *Regents of Univ. of Mich. v. Ewing*, 474 U.S. 214, 225 (1985)); *see also Iyer v. George Washington Univ. Sch. of Med. & Health Scis.*, No. 24-cv-130 (SLS), 2026 WL 1864049, at *7 (D.D.C. June 29, 2026). Other Circuits have granted this deference more explicitly. *See, e.g.*, *Zukle*, 166 F.3d at 1047–48 (9th Cir.) (citing cases from the First, Second, and Fifth Circuits that did the same); *Halpern*, 669 F.3d at 463 (4th Cir.) (adding cases from the Third, Seventh, and Eighth Circuits); *Kaltenberger v. Ohio Coll. of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998); *Cunningham v. Univ. of N.M. Bd. of Regents*, 531 F. App'x 909, 920 (10th Cir. 2013). Decisions like the one at issue here, which relate to "the academic performance of students and their entitlement to promotion or graduation," fall squarely within a school's discretionary academic judgment. *Bd. of Curators, Univ. of Mo. v.*

*Horowitz*, 435 U.S. 78, 96 n.6 (1978) (Powell, J. concurring); *see also Ewing*, 474 U.S. at 225. And the "rule of judicial nonintervention" in assessment of academic qualifications is "particularly appropriate in the health care field where the students who receive degrees will provide care to the public" and courts are ill-equipped to act as de facto certification boards. *Alden v. Georgetown Univ.*, 734 A.2d 1103, 1109 (D.C. 1999) (internal quotation marks omitted); *accord Hajjar-Nejad v. George Washington Univ.*, 37 F. Supp. 3d 90, 117 (D.D.C. 2014). To be sure, the court "must be careful not to allow academic decisions to disguise truly discriminatory requirements." *Zukle*, 166 F.3d at 1048. And it must ensure that institutions comply with their obligation to "seek suitable means of reasonably accommodating a handicapped person." *Id.* (internal quotation marks omitted). But so long as that obligation is met, the court "extend[s] judicial deference to the evaluation made by the institution itself, absent proof that its standards and its application of them serve no purpose other than to deny an education to handicapped persons." *Id.* (internal quotation marks omitted).

The facts of this case are like those of many others in which a medical student or resident requested an alteration of academic standards to accommodate their disabilities. For example, in *Rodrigo v. Carle Foundation Hospital*, a resident sought a fourth attempt to take a medical licensing exam despite the hospital's three-strikes policy. 879 F.3d at 242–43. But the Seventh Circuit concluded that, after failing the exam three times, the plaintiff was not a "qualified individual." *Id.* at 243. The court observed that the hospital "consider[ed] passage of the test essential to the resident's medical training." *Id.* "Indeed, a resident who does not pass [the exam] is not eligible to become a licensed physician[.]" *Id.* The longstanding three-strikes policy—which was memorialized in writing—was accordingly enforced without exception. *Id.* So, the

court said, "the evidence supports only one conclusion: a resident who cannot pass the test in the requisite time frame is not a 'qualified individual' for the third Program year." *Id.* at 243.

Similarly, in *Awodiya v. Ross University School of Medicine*, a medical student sought a sixth attempt at passing a required exam after failing the allowed five times. 857 F. App'x 533, 537 (11th Cir. 2020). In rejecting the plaintiff's failure-to-accommodate claim, the Eleventh Circuit reasoned that "[t]he [Rehabilitation Act] and ADA 'impose [] no requirement upon an educational institution to lower or to effect substantial modifications of standards to accommodate a handicapped [or disabled] person.'" *Id.* (last two alterations in original) (quoting *Se. Cmty. Coll.*, 442 U.S. at 413). And the plaintiff had not shown that "'special circumstances' require[d] an exception to [the school's] academic requirement." *Id.*

In *Cunningham v. University of New Mexico Board of Regents*, a medical student sought and was denied accommodations for the Step 1 exam, leading to two unsuccessful attempts. 531 F. App'x at 912–13. The plaintiff, who faced the prospect of both a third failure and an inability to complete the medical school curriculum in the allotted time, sued the school for failure to accommodate his disability. *See id.* at 913. The Tenth Circuit held that, "[t]o the extent that [the plaintiff] avers [the school] should have changed its program requirements, such an accommodation would not be reasonable." *Id.* at 920. The court explained that the school need not "change its requirements regarding the time it takes to graduate or pertaining to successful completion of the . . . Step 1 test," again affirming the principle that "[c]ompelling an educational institution to change its requirements for advancement through its medical school program would represent a substantial, rather than reasonable accommodation because it would fundamentally alter the nature of the educational services and program it provides." *Id.* at 920 (internal quotation marks and citations omitted).

Finally, *Lipton v. New York University College of Dentistry* concerned a dental student's request for a further extension of a mandatory deadline to pass a standardized exam. 865 F. Supp. 2d 403 (S.D.N.Y. 2012), *summarily aff'd*, 507 F. App'x 10 (2d Cir. 2013). The district court noted that the school "has a right to impose a time in which its graduation requirements must be completed" because "[s]uch time periods have the obvious and important purpose of contributing to the discipline and rigor desirable in a professional education." *Id.* at 410. The law did not require the school to grant an accommodation request that "amounts to . . . a waiver of [such] graduation requirements." *Id.* (internal quotation marks omitted). On appeal, the Second Circuit summarily affirmed, adding that the school's "refusal to create such an exception to its graduation requirements is entitled to 'great deference.'" 507 F. App'x at 11 (citation omitted).

Now back to the instant case. Plaintiff seeks an additional opportunity to take the Step 1 exam, which would exceed HCOM's three-attempt limit. Pl.'s Resp. Stmt. ¶ 101; Def.'s Ex. 36. The three-strikes policy is well-documented as a core aspect of HCOM's medical degree program. The policy has been in place since at least 1990, *see Ferrell v. Howard Univ.*, No. 98-cv-1009 (DAR), 1999 WL 1581759, at *1 (D.D.C. Dec. 2, 1999), and the school granted no exceptions in the years leading up to Plaintiff's dismissal, Pl.'s Resp. Stmt. ¶ 26. Dean Mighty's declaration explains why. As part of HCOM's mission "to train medical professionals to provide top notch medical care to underserved populations," "[i]t is vital that HCOM graduates meet national standards for medical knowledge" and are able to "successfully obtain and complete a residency program." Mighty Decl. ¶ 19. HCOM's curriculum is designed in furtherance of this mission, and the Step 1 exam is viewed as a "fundamental requirement of [its] academic program." *Id.* ¶¶ 20, 30. The three-attempt limit, along with the deadline to achieve a passing score, "ensure[s] that students are competent for further studies, graduation, and licensing" and "that they retain

fresh knowledge of their first two years of training that is needed for the clinical phase of their medical training." *Id.* ¶ 24. In HCOM's judgment—as supported by medical literature—"a student who is unable to pass USMLE Step 1 after three attempts is likely to have difficulty in achieving graduation and licensure." *Id.* ¶ 31. Moreover, those students are "unlikely to be accepted into residency programs, even if they pass Step 1 on a fourth or subsequent attempt." *Id.* ¶¶ 31, 33. Thus, allowing students "[a]ny additional attempts would force HCOM to reduce its academic standards and require a fundamental modification of its academic program." *Id.* ¶ 29.

The court defers to HCOM's reasoned judgment on this "genuinely academic decision." *Steele*, 899 F.3d at 948–49. Plaintiff has offered no evidence that would contradict or undermine Dean Mighty. And HCOM met its obligation to accommodate Plaintiff by granting him an extended leave of absence for test preparation and multiple extensions to take the Step 1 exam, which gave him the chance to pass long after the school's ordinary deadline of approximately one-year after completing the sophomore year. *See Zukle*, 166 F.3d at 1048. As the similar cases above all concluded, neither the Rehabilitation Act nor the ADA require HCOM to do more—it need not contravene its academic judgment by fundamentally altering a longstanding, uniformly enforced policy pertaining to a core requirement to graduate from its M.D. program. And Plaintiff has not argued that any "special circumstances" require HCOM to make an exception in his case. *See Awodiya*, 857 F. App'x at 537 (internal quotation marks omitted).

Plaintiff marshals a litany of cases in support of his argument that HCOM was required to grant him an additional attempt. *See* Pl.'s Mem. of L. in Opp'n to Def.'s Mot., ECF No. 58 [hereinafter Pl.'s Mem.], at 12–15. None move the needle. In some, the court faulted the defendants for their failure to explain how the requested accommodation would constitute a fundamental alteration of their academic standards and accordingly declined to defer to their

judgments. *See Dean v. Univ. at Buffalo Sch. of Med. & Biomed. Sci.*, 804 F.3d 178, 191 (2d Cir. 2015); *Doe v. Samuel Merritt Univ.*, 921 F. Supp. 2d 958, 969–70 (N.D. Cal. 2013). By contrast, here, the court defers to HCOM's reasoned justification for its three-strikes policy and explanation as to why making an exception for Plaintiff would constitute a fundamental alteration. In the remainder of Plaintiff's cases, the nature of the plaintiffs' requested accommodations—which were different from that requested here—did not require the court to reach the fundamental-alteration question at all. *See Shaikh v. Tex. A&M Univ. Coll. of Med.*, 739 F. App'x 215, 218–225 (5th Cir. 2018); *J.C. v. Rowan Univ. Sch. of Osteopathic Med.*, No. 17-cv-2778, 2018 WL 447615, at *3–5 (D.N.J. Jan. 17, 2018); *McCoy v. E. Va. Med. Sch.*, No. 2:11-cv-494, 2012 WL 662529, at *1–2 (E.D. Va. Feb. 18, 2012). One case even expressly distinguished its facts from a case involving a student who petitioned HCOM for a fourth attempt to take the Step 1 exam. *See J.C.*, 2018 WL 447615, at *4 (citing *Ferrell*, 1999 WL 1581759, at *4). On that same distinction, the court finds these cases inapposite.

Ultimately, there is no genuine dispute that granting Plaintiff's requested accommodation would require HCOM to fundamentally alter its academic requirements. The ADA and Rehabilitation Act impose no such obligation. Defendant is therefore entitled to summary judgment.

**B. Ability to Pass Step 1**

Alternatively, Plaintiff is not a "qualified individual" because he has not established a genuine dispute as to his ability to pass the Step 1 exam on a hypothetical fourth try. Recall that a "qualified individual" is one who can perform the essential functions of the position "with or without reasonable accommodation." *Breen*, 282 F.3d at 841 (internal quotation marks omitted). So, in this context, Plaintiff must provide "evidence that [he] could pass the exam if properly

accommodated." *Chapman v. Meharry Med. Coll.*, No. 21-5866, 2022 WL 4242394, at *3 (6th Cir. June 15, 2022) (Order); *see also Davis*, 422 U.S. at 406.

Plaintiff, however, provides no such evidence. Instead, he offers only his own belief that he could pass the exam if given another opportunity. Pl.'s Mem. at 17 (citing Pl.'s Resp. Stmt., Aff. of Pablo Abreu, ECF No. 58-1 [hereinafter Abreu Decl.], ¶¶ 30, 40–41). Plaintiff avers that, were he to be granted an additional attempt after allowing time for his medication to take effect, his anxiety would be reduced to the point that he would succeed in passing the exam. *See* Abreu Decl. ¶¶ 30, 40. But a court may set aside a plaintiff's "self-serving testimony [if it is] unsupported by corroborating evidence[] and undermined by . . . other credible evidence." *Chenari v. George Washington Univ.*, 847 F.3d 740, 747 (D.C. Cir. 2017) (internal quotation marks omitted).

Here, all credible evidence points the other way. Both before and after his diagnosis, Plaintiff was granted several extensions of time, including to participate in intensive study programs. *See supra* Section II.A. Although Plaintiff had planned to participate in the program for eight weeks, he remained in the program for seven months. Pl.'s Resp. Stmt. ¶ 52. Following his diagnosis, his treating physicians provided him with relaxation and focus techniques, as well as medication. *See id.* ¶¶ 66, 97. As a result, Plaintiff expressed that he felt more focused, more in control, and less anxious on his third attempt compared to previous ones. *Id.* ¶¶ 99–100. Yet Plaintiff's score *dropped* by 11 points. *Id.* ¶ 98. And Defendant's expert—whose report Plaintiff does not adequately rebut—"found no evidence to support [Plaintiff's] claim that his failures of the Step 1 exams were due to new medication that had not yet taken effect." *See id.* ¶ 125.

Plaintiff therefore has not shown a genuine dispute that additional treatment or time to study would make it likely that he would pass the Step 1 exam on a fourth attempt. For this reason, too, Plaintiff is not a "qualified individual" and summary judgment in favor of Defendant is proper.

## V. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment, ECF Nos. 52 & 56, is granted. A final, appealable Order accompanies this Memorandum Opinion.

Dated: August 19, 2026

Amit P. Mehta
United States District Judge